| | |
|---|---|
| DISTRICT COURT, CITY AND COUNTY OF DENVER, COLORADO<br><br>1437 Bannock Street<br>Denver, CO 80202 | DATE FILED: June 23, 2017 3:20 PM<br>FILING ID: DC32D789B8A5A<br>CASE NUMBER: 2017CV32293 |
| **Plaintiff:**<br><br>CEDAR COURT CONDOMINIUM ASSOCIATION, INC., a Colorado nonprofit corporation<br><br>**Defendant:**<br><br>AMERICAN FAMILY MUTUAL INSURANCE COMPANY, S.I., f/k/a AMERICAN FAMILY MUTUAL INSURANCE COMPANY, a Wisconsin Corporation | ▲   **COURT USE ONLY**   ▲<br><br>Case No. _____<br><br>Courtroom/Division _____ |
| Attorneys:<br>       Stephen B. Shapiro, No. 13464<br>       Alexis A. Reller, No. 45840<br>Address:<br>       **SHAPIRO BIEGING BARBER OTTESON LLP**<br>       4582 S. Ulster Street Parkway, Suite 1650<br>       Denver, CO 80237<br>       (720) 488-0220<br>       sbs@sbbolaw.com<br>       aar@sbbolaw.com<br><br>Fax Number:  (720) 488-7711 | |

## COMPLAINT AND JURY DEMAND

Plaintiff Cedar Court Condominium Association, Inc., a Colorado nonprofit corporation, through counsel, Shapiro Bieging Barber Otteson LLP, hereby submits its Complaint against Defendant American Family Mutual Insurance Company, S.I., f/k/a American Family Mutual Insurance Company.

**Exhibit A**

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff Cedar Court Condominium Association, Inc. ("Cedar Court" or "Insured") is a Colorado nonprofit corporation and the community association of Cedar Court Condominiums, a residential community located in the city and county of Denver, Colorado (the "Community").

2.      The Community contains three separate buildings, with Building 1 containing 11 units, Building 2 containing 11 units, and Building 3 containing 2 units.

3.      Defendant American Family Mutual Insurance Company, S.I. f/k/a American Family Mutual Insurance Company ("American Family"), is a Wisconsin corporation registered to do business in Colorado.

4.      American Family issued a Business Owners insurance policy, Policy No. 05-XU978602 (the "Policy"), to Cedar Court which was effective April 22, 2015 to April 22, 2016.

5.      Pursuant to the terms of the Policy and the Colorado Insurance Code, American Family has agreed:  (i) to submit to the jurisdiction of a court of competent jurisdiction within the United States and (ii) that service may be effected upon it by serving the Colorado Division of Insurance, 1560 Broadway, Denver, CO 80202.

6.      Venue is proper in this county pursuant to C.R.C.P. 98, given that Cedar Court is located in Denver County, Colorado, that the Policy was to be performed in Denver County, Colorado, and that the tortious conduct described herein occurred in Denver County, Colorado.

7.      Jurisdiction is proper in this Court pursuant to C.R.S. § 13-1-124(1)(a), because the Defendant transacts business in this state and committed a tortious act in this state.

## <u>GENERAL ALLEGATIONS</u>

8.      On June 4, 2015, a hail storm hit the Community.

9.      On or about June 12, 2015, Cedar Court notified American Family of the hail event and submitted a claim under the Policy. American Family designated this claim with three claim numbers, one for each of the three buildings in the Community: 00225116162, 00225116172, and 00225116175 (the "First Claims").

10.     Sometime between June 13 and June 24, 2015, American Family inspected the Community to evaluate the losses under the First Claims.

11.     On or about June 24, 2015, American Family issued written estimates for what it perceived to be the losses under the First Claims, which included $818.17 in estimated damages for the windows at Building 2 only.

12.     On June 24, 2015, a severe hail storm hit the Community, causing widespread damage and requiring extensive repairs to the improvements in the Community.

13.     The June 24, 2015, hail storm occurred before the commencement of any substantive repair work that was identified in American Family's First Claims estimates.[1]

14.     Shortly after the June 24, 2015 event, Cedar Court notified American Family and submitted a claim under the Policy. American Family designated this claim with three claim numbers, one for each of the three buildings in the Community: 00225123332, 00225123341, and 00225123342 (the "Second Claims").

15.     Thereafter, American Family inspected the Community to evaluate what it perceived to be the losses under the Second Claims and issued a written estimate.

---

[1]      Upon information and belief, there may have been preliminary clean up and/or debris removal at the Community prior to the June 24, 2015, hail storm.

16.     American Family overlooked and/or undervalued the damages under the Second Claims, which resulted in a lowball estimate that Cedar Court would have to work to dispute.

17.     Sometime in early to mid-July 2015, Cedar Court engaged CJ Restoration, which began inspecting and estimating the damages to the Community.

18.     CJ Restoration identified extensive hail damage to the Community, including but not limited to damage to the windows on all three buildings as a result of the June 24, 2015, hail storm.

19.     Due to the observable hail damage to the windows on all three buildings at the Community, CJ Restoration obtained an estimate for each building at the Community from Pella Windows & Doors, Inc. ("Pella") on or about October 12-13, 2015.

20.     These Pella estimates were incorporated into the complete detailed estimates prepared by CJ Restoration for the complete scope of work at the Community.

21.     In October 2015, Cedar Court, through its contractor, CJ Restoration, submitted to American Family detailed estimates for the full scope of work under the Second Claims along with substantial supporting documentation, including but not limited to approximately 1,500 photographs of the damage taken shortly after the June 24, 2015 hail storm.

22.     Thus, as of October 2015, Cedar Court had provided to American Family all information that American Family needed to complete properly perform an adjustment.

23.     On December 2, 3, and 7, 2015, Unified Building Services ("UBS") conducted inspections of the Community, on behalf of American Family.

24.     On or about February 17, 2016, UBS issued a report to American Family, which, opined, in part, that a portion of the observed damages, including the damages to the Pella windows at the Community, were caused by "mechanical damage" rather than by hail.

25.     UBS' conclusions are unreasonable given that the window damages are present on all three buildings of the Community and are generally consistent between windows on the ground floor and windows on the third floor.

26.     UBS' conclusions are further unfounded because there is no reasonable explanation as to how windows could be damaged mechanically or by vandalism when there is almost no access to most of the third floor windows, which show similar damage to the ground floor windows.

27.     On April 1, 2016, Cedar Court obtained a letter from Pella verifying that the extensively hail damaged Pella windows at the Community must be replaced due to age, stating that Pella is "not able to repair or replace these because Pella factory no longer provides replacement parts or sashes for these vintage windows."

28.     In June 2016, American Family issued detailed estimates for the First and Second Claims, including revisions to its initial estimates.

29.     These revisions resolved some, but not all, of American Family's previous omissions to the scope of necessary work and undervaluation of the repairs.

30.     However, American Family did not include portions of the Second Claims in its estimate, including the replacement of the damaged Pella windows.

31.    American Family unreasonably relied on UBS' unsupportable conclusions and asserted that the Pella windows were damaged as a result of mechanical damage, rather than the hail storm that caused the Second Claims.

32.    American Family also suggested in April 2017 that Cedar Court submit another separate claim for the damaged Pella windows with the cause of the loss identified as "vandalism."

33.    However, Cedar Court would have no basis for an additional claim for vandalism because the window damages were caused by the June 24, 2015, hail storm.

34.    Pursuant to the First Claims, American Family inspected the Community just days before the June 24, 2015, hail storm. During those inspections, American Family only acknowledged minimal damage to only one of the three buildings ($818.17 to Building 2).

35.    Because the damage to the windows was readily observable on most windows of all three buildings following the June 24, 2015, hail storm, it is clear that the damage to the windows was caused by the June 24, 2015, hail storm.

36.    Thus, it is unreasonable for American Family to assert that the windows were damaged due to vandalism or "mechanical" causes.

37.    It appears that the cause of the window damage was challenged by American Family only after it was determined that the damaged windows could not be repaired and had to be replaced.

38.    Throughout the adjustment process, American Family has caused unreasonable delays and has been unresponsive to Cedar Court's requests for information.

39.     Due to American Family's unreasonable delays and denials, Cedar Court was forced to retain a public adjuster, C3, to assist Cedar Court in approximately July 2016.

40.     During the adjustment process, Cedar Court has been forced to work with at least three different American Family field adjusters/inspectors, between three and five different American Family desk adjusters, and multiple representatives of UBS, American Family's retained consulting firm.

41.     While Cedar Court has attempted to be patient and cooperative, these excessive staffing changes have caused significant delays, due in part to the time for each new adjuster to get up to speed on the claims. Cedar Court, its contractor, and its public adjuster have wasted time and resources re-educating and re-negotiating with each new adjuster that American Family has assigned to the First and Second Claims, only to have to start over again with new adjusters.

42.     Cedar Court, its contractor, its public adjuster, and now its retained counsel have requested time and time again that American Family fulfill its adjustment obligations and pay to Cedar Court the benefits owed under the Policy, including through several written letters sent to American Family in the summer and fall of 2016.

43.     Since October 2015 when Cedar Court provided complete information to American Family and on an ongoing basis thereafter, Cedar Court has requested a supplemental payment to cover the costs of the Pella window replacement, in the amount of $265,949.00.

44.     By way of a letter dated April 25, 2017, after ongoing negotiations, American Family conclusively denied the request and continues to refuse to include the damaged windows in the Second Claims.

45.     Thereafter, Cedar Court determined that it needed to demand an appraisal to the resolve the disputed valuation as to the Second Claims, including the hail damaged Pella windows.

46.     The Policy contains a provision that purports to limit or supersede applicable statutes of limitations, stating that "[n]o one may bring a legal action against us under this insurance unless . . .[t]he action is brought within 2 years after the date on which the direct physical loss or damage occurred."

47.     Cedar Court disputes the validity of this Policy provision, especially given that that American Family's unreasonable delays have caused the period to nearly expire.

48.     On or about May 23, 2017, with the two year anniversary of the dates of loss approaching and with no resolution of the dispute, Cedar Court, through its public adjuster, provided a proposed Tolling Agreement to American Family.

49.     On May 25, 2017, Cedar Court sent an Appraisal Demand Letter to American Family, which invokes Cedar Court's contractual right to an appraisal process pursuant to section I(E)(2) of the Policy.

50.     On May 26, 2017, American Family unreasonably denied Cedar Court's request to enter into a Tolling Agreement.

51.     Because of American Family's refusal to enter into the Tolling Agreement, on or about June 14, 2017, Cedar Court was forced to hire legal counsel to protect its rights and obtain the insurance benefits to which it was entitled under the Policy.

52.    On June 15, 2017, Cedar Court, via correspondence from counsel, again requested that American Family enter into a Tolling Agreement in light of Cedar Court's legal right to the appraisal process and the need for additional time to complete the same.

53.    On June 20, 2017, Cedar Court followed up with American Family via email regarding the necessity of a Tolling Agreement.

54.    Through counsel, Cedar Court has advised American Family that entering into the Tolling Agreement or otherwise extending the contractual limitations deadline was critical because:

   a.    Cedar Court is contractually entitled to the appraisal process, which has been commenced, but is not yet complete;

   b.    The appraisal process must be completed in order to finalize the Second Claims and the repairs at the Community;

   c.    The refusal to enter into the Tolling Agreement could impede or extinguish Cedar Court's legal rights; and

   d.    American Family's refusal to enter into the Tolling Agreement would force Cedar Court to file the present lawsuit to preserve and protect its legal rights.

55.    American Family has ignored and not responded to Cedar Court's multiple requests in June 2017 to enter into a Tolling Agreement.

56.    On June 20, 2017, American Family provided notice to Cedar Court's chosen appraiser, RJR Becker, that American Family selected an appraiser.

57.    While progress has been made, the appraisal process is not yet complete and additional time is needed.

58.     However, because American Family would not enter into the Tolling Agreement, Cedar Court was forced to incur attorney fees and costs to file this action in order to preserve, protect, and obtain benefits to which Cedar Court is contractually entitled.

59.     All conditions precedent to Cedar Court filing these claims have been satisfied or excused.

**FIRST CLAIM FOR RELIEF**
**(Breach of Insurance Contract)**

60.     Cedar Court incorporates the foregoing paragraphs as if fully restated herein.

61.     American Family breached the express and implied terms of the Policy, and its duty of good faith and fair dealing, by unreasonable claims handling conduct, including but not limited to the following:

a.     failing to promptly adjust the Second Claims after Cedar Court's submission on July 28, 2015, despite repeated urging by Cedar Court, its public adjuster, its contractor, and its retained counsel;

b.     lowballing the first estimate and scope of work for the Second Claims, including by refusing to pay for necessary repairs caused by the Second Claims and improperly attributing causation to "mechanical" damage  or "vandalism" rather than to the June 24, 2015, hail storm;

c.     refusing to pay for window replacement caused by the Second Claims, after the window manufacturer verified that repairs to the windows were not possible due to the age of the windows;

d.     continuing to unreasonably delay an adequate adjustment of the claims until nearly two years from the date of loss for Cedar Court's claims, despite knowledge of the two-year contractual deadline in the Policy;

e.     continually reassigning new adjusters to the First and Second Claims, causing delays and forcing Cedar Court to spend time and resources to re-educate and re-negotiate with each new American Family representative;

f.     refusing to enter into a Tolling Agreement despite the ongoing, but not yet complete, appraisal process;

g.   delaying adequate adjustment and requiring that Cedar Court hire legal counsel, merely to obtain contractually promised benefits;

h.   repeatedly failing and refusing to extend or toll the contractual limitations period under the Policy, despite multiple reasonable and common sense requests of Cedar Court.

62.   As a direct and proximate result of American Family's breaches of its insurance agreement and good faith duties, Cedar Court has suffered and continues to suffer damages.

## SECOND CLAIM FOR RELIEF
### (Declaratory Judgment)

63.   Cedar Court incorporates the foregoing paragraphs as if fully restated herein.

64.   A dispute has arisen between Cedar Court and American Family as to the two-year contractual deadline within which Cedar Court may file suit to enforce its rights with respect to the claims under the Policy, at to other deadlines within the Policy, as to American Family's denial of portions of the Second Claims' damages, and as to the reasonableness of American Family's claims handling to date.

65.   Consequently, there exists a present justiciable controversy between Cedar Court and American Family with respect to enforceability of the two-year contractual limitations period and other deadlines in the Policy, any and all other limitations period pursuant to law or equity which may also or otherwise apply, as to American Family's denial of portions of the Second Claims' damages, and with respect to the reasonableness of American Family's claims handling conduct to date.

66.   Thus, a declaration of the parties' rights, status, or other legal relations with respect thereto is appropriate pursuant to C.R.C.P. 57 and C.R.S. § 13-51-101, *et seq*.

67.   Specifically, Cedar Court is entitled to a declaratory judgment that:

a.      American Family unreasonably delayed adjustment of the Second Claims and thereby unreasonably delayed payment of benefits; and

b.      Due to American Family's conduct, the Policy's two-year contractual limitation period, and any other deadlines which may otherwise apply, are extended and tolled for the entire period of American Family's adjustment of the First and Second Claims, from July 28, 2015 through and including June 23, 2017.

## THIRD CLAIM FOR RELIEF
### (Common Law Insurance Bad Faith)

68.      Cedar Court incorporates the foregoing paragraphs as if fully restated herein.

69.      Pursuant to the terms and provisions of C.R.S. § 10-1-102(7), policies of insurance are contracts providing indemnity or payment of a specified benefit when a loss occurs as described in the policies.  This Policy is an insurance policy pursuant to C.R.S. § 10-1-102(7).

70.      Defendant American Family owed a duty to Cedar Court as its Insured under the Policy to deal with Cedar Court fairly and in good faith.

71.      Defendant breached that duty by, among other things, each of the following:

a.      unreasonably failing to properly construe the Policy;

b.      unreasonably failing to investigate the Second Claims and the underlying facts in a proper and timely manner, and failing to make payment in a reasonable and timely manner;

c.      failing to act reasonably in the adjustment and resolution of the Second Claims;

d.      failing to adopt and comply with reasonable standards in connection with the investigation and adjustment of the Second Claims;

e.      disregarding damages at the Community, undervaluing necessary repairs, unreasonably concluding damages were not caused by the hail storms, and providing lowball estimates and incomplete scopes of work;

f.      continually and without basis, other than pretext, unreasonably delaying a clear obligation of payment for the Second Claims under the terms of the Policy;

    g.    unreasonably failing to promptly, properly, or adequately provide its Insured with reasonable explanations for Defendant's delays, including repeatedly reassigning adjusters to the First and Second Claims, forcing Cedar Court to re-educate and re-negotiate with each new adjuster; and

    h.    exacerbating its unreasonable delays by forcing its Insured to retain legal counsel during the claims handling process and to file this action in order to preserve, protect, and obtain benefits to which the Insured is contractually entitled.

72.     The failure of American Family to properly proceed with and adjust the Second Claims caused, and is continuing to cause harm, damage, or injury to Cedar Court.

73.     Upon information and belief, American Family has undertaken this improper course of action and conduct that is not reasonably related to the terms of the Policy or laws of the State of Colorado, but instead based upon a national or regional policy to avoid, delay, or prevent the meaningful, prompt, and reasonable resolution of claims similar to the Second Claims.

74.     Further, American Family delayed adjustment of the Second Claims and refused to toll so that the Policy's contractual limitations period would expire before the appraisal process could be completed and Cedar Court is able to complete repairs, thus Cedar Court was forced to retain legal counsel and file this action to avoid forfeiting its legal rights to obtain full coverage.

75.     As a direct and proximate result of American Family's breaches of its duty of good faith, Cedar Court has suffered damages in an amount to be proven at trial, including but not limited to loss of use of funds, inability to timely repair and mitigate the damages suffered to the Insured's property, attorney fees, costs and expenses relating to the resolution, settlement, and payment of the Second Claims, and other damages.

## FOURTH CLAIM FOR RELIEF
### (Statutory Damages for Insurance Bad Faith)

76.     Cedar Court incorporates the foregoing paragraphs as if fully restated herein.

77.     Cedar Court is a "first-party claimant" within the meaning of C.R.S. §§ 10-3-1115 and 10-3-1116.

78.     American Family acted unreasonably in denying or delaying claims for benefits by Cedar Court under the Policy with respect to the Second Claims.

79.     Cedar Court has suffered damages as a direct and proximate result of Defendant American Family's conduct.

80.     In addition to any other damages or relief available to Cedar Court, Cedar Court is entitled to recover damages in the amount prescribed by C.R.S. § 10-3-1116, in an amount to be proven at trial.

81.     In addition to any other damages or relief available to Cedar Court, Cedar Court is entitled to recover its court costs and attorney fees as prescribed by C.R.S. § 10-3-1116.

## JURY DEMAND

Plaintiff Cedar Court demands a trial by jury on all issues so triable.

WHEREFORE, Plaintiff Cedar Court Condominium Association, Inc., respectfully requests that the Court enter judgment in its favor and against Defendant American Family as follows:

A.     For Plaintiff's actual, consequential, and statutory damages in amounts to be determined at trial, costs of suit, interest as permitted by law from the date of occurrence to the date of entry of judgment, as well as post-judgment interest until paid;

B.     For a declaratory judgment that:

      a.      American Family's failure to complete its adjustment of the Second Claims and to pay benefits due was unreasonable; and

      b.      Due to American Family's conduct, the Policy's two-year contractual limitation period, restrictions on the time period allowed for recovery of depreciation amounts, ordinance or law coverage, and any and all other time limitations and other deadlines pursuant to the Policy, law or equity which may otherwise apply, are extended and tolled for the entire period of American Family's adjustment of the Second Claims, from July 28, 2015 through and including June 23, 2017.

C.      For Plaintiff's costs of suit, expert fees, and attorney fees as permitted by applicable statute, law, or contract; and

D.      For any other relief that this Court deems just and proper under the circumstances.

DATED this 23rd day of June, 2017.

Respectfully submitted,

*Filed electronically and the original signature is on file at Shapiro Bieging Barber Otteson LLP*

By:    /s/ Stephen B. Shapiro
           Stephen B. Shapiro, No. 13464
           Alexis A. Reller, No. 45840
           **SHAPIRO BIEGING BARBER OTTESON LLP**
           4582 S. Ulster Street Parkway, Suite 1650
           Denver, CO 80237
           (720) 488-0220

           ATTORNEYS FOR PLAINTIFF
           CEDAR COURT CONDOMINIUM
           ASSOCIATION, INC.

**Plaintiff's Address:**
Cedar Court Condominium Association, Inc.
c/o ACM/Lakewood Realty
9250 West 5th Avenue
Lakewood, CO 802226
00472363.DOCX